**SINGER et al., Appellants,**

v.

**CITY OF FAIRBORN et al., Appellees.**

[Cite as *Singer v. Fairborn* (1991), 73 Ohio App.3d 809.]

Court of Appeals of Ohio,
Greene County.

Nos. 90 CA 27, 90 CA 42.

Decided July 9, 1991.

*David C. Greer* and *Valerie R. Wilt,* for appellants.

*Robert Manley, Gary E. Powell* and *Gerald E. Schlafman,* Fairborn City Solicitor, for appellees.

FAIN, Presiding Judge.

Plaintiff-appellant Harold H. Singer appeals from the trial court's entry of summary judgment in favor of defendant-appellee city of Fairborn. Singer contends that the trial court erred in granting Fairborn's motion for summary judgment. With respect to the individual defendants Kuchenbecker and Kotecha, we agree with Singer that summary judgment was improvidently granted. With respect to defendant-appellee Fairborn, we conclude that summary judgment was properly granted. Accordingly, the judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded for further proceedings against Kuchenbecker and Kotecha.

## I

Singer sold an option to purchase an 18.5-acre parcel of property to Ramco Realty for the development of a K-Mart shopping center in the early 1970s. An option was granted to Shell Oil Company for 1.5 acres, the corner lot of the 20-acre parcel. The options to purchase were contingent upon obtaining the necessary zoning for the intended developments. Due to opposition to the development of a gas station on the corner parcel, Shell Oil cancelled its option

to purchase the corner parcel. A new request was submitted to Fairborn to rezone the twenty acres as a planned commercial development. As a result, Ramco Realty purchased the option for the 1.5-acre corner lot.

The property was rezoned as a planned commercial development with a little over two of the twenty acres dedicated for street improvements. The corner lot was designated as green space. The master development plan and final plat plan were approved by Fairborn City Council, signed by Harold H. Singer and Sol S. Kling, owners of the twenty-acre parcel, and filed in 1974. The plat was designated as the Five Points Planned Unit Development.

Ramco Realty exercised the option to purchase the 18.5-acre parcel and cancelled the option to purchase the 1.5-acre lot. Singer was approached in 1988 by individuals interested in developing a mini-mall on the corner lot. A request to amend the Planned Unit Development ("PUD") to permit construction on the corner lot was filed. The proposal was called "Plaza at the Pointe." The Fairborn Planning Staff recommended approval of the development. The Fairborn Planning Board rejected the Plaza at the Pointe proposal. Singer appealed the denial to the Fairborn City Council, which upheld the planning board's decision.

Singer filed suit in the Greene County Common Pleas Court, appealing the denial of the proposed amendment of the Five Points PUD. Fairborn moved to dismiss Singer's complaint. The trial court converted the motion to dismiss into a motion for summary judgment. Singer filed a memorandum in opposition to the motion. Singer then filed an amended complaint alleging an additional claim that two individual planning board members had fraudulently misrepresented certain facts to the planning board and city council. Fairborn answered the amended complaint and counterclaimed, to which Singer replied. The trial court granted summary judgment in favor of all defendants. From the judgment of the trial court, Singer appeals.

The trial court has since filed a *nunc pro tunc* judgment entry amending its original judgment entry of January 16, 1990, and dismissing Fairborn's counterclaim as moot, due to a rezoning of the subject property through an initiative referendum which passed as a result of the November 1990 election. The corner lot is now rezoned to permit the commercial development requested by Singer. Because Singer prayed for money damages allegedly incurred from Fairborn's denial of his rezoning petition, in addition to appealing the denial to the trial court, his cause of action is not entirely moot, although parts of it are.

## II

Singer's first assignment of error is as follows:

"The trial court erred in entering summary judgment in favor of the defendants/appellees as no motion was pending before the court."

Singer contends that because he filed an amended complaint after Fairborn's motion to dismiss was converted into a motion for summary judgment, the motion for summary judgment was rendered moot; and because Fairborn failed to renew its motion for summary judgment after answering the amended complaint, there was no motion pending before the trial court. Singer's position is that Fairborn had to elect between renewing the motion for summary judgment and answering the amended complaint.

Singer's amended complaint alleged fraudulent misrepresentations by individual defendants in addition to the identical claims of the initial complaint. Pursuant to Civ.R. 15(A), Fairborn was required to respond to the amended complaint filed by Singer. The Civil Rules do not provide that a pending motion for summary judgment is rendered void by the filing of an amended complaint. There is no affirmative duty upon the moving party to renew its motion for summary judgment as Singer contends, at least in the absence of any amendment to the complaint that would affect the issues raised in the motion for summary judgment.

Singer's first assignment of error is overruled.

### III

Singer's second, third and fifth assignments of error are as follows:

"The trial court erred in holding that the plaintiffs/appellants were estopped under the *Greenhills* case from challenging the constitutionality of the city of Fairborn's taking of their property."

"The trial court's decision granting summary judgment in favor of the defendants was not supported by the facts."

"The trial court erred in granting summary judgment in favor of the defendants in all respects as estoppel under *Greenhills* does not preclude the plaintiffs/appellants' challenge to the constitutionality of the defendants' actions or the constitutionality of the three/fourths majority requirement of Fairborn City Council to overrule the decisions of the Fairborn Planning Board."

In granting Fairborn's motion for summary judgment, the trial court relied upon *Greenhills Home Owners Corp. v. Greenhills* (1966), 5 Ohio St.2d 207, 34 O.O.2d 420, 215 N.E.2d 403. To render summary judgment, a trial court must determine that there is no genuine issue as to any material fact, that the moving party is entitled to judgment as a matter of law, and that, when the evidence is construed most strongly in the opposing party's favor, reasonable

minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. Although we conclude that the trial court was correct in granting summary judgment for Fairborn, we reach this conclusion for different reasons than those expressed by the trial court.

■ Singer alleges four counts in his complaint which we will consider in conjunction with his second, third, and fifth assignments of error on appeal. The first count is that Fairborn's denial of Singer's proposed amendment to the PUD was unreasonable, arbitrary, capricious, and not rationally related to any legitimate governmental interest.

■ The only relief available to Singer for such a claim has already been obtained by Singer due to rezoning the property through referendum. "A cause of action for money damages cannot be maintained against a municipality for losses sustained as the result of the adoption of a zoning ordinance which is subsequently declared invalid." *Superior Uptown v. Cleveland* (1974), 39 Ohio St.2d 36, 68 O.O.2d 21, 313 N.E.2d 820, syllabus. Such an award would violate the doctrine of sovereign immunity, which is a valid defense under limited circumstances in Ohio. Immunity for legislative acts is based upon a policy decision favoring the free exercise of legislative discretion over remedying economic harm suffered by individuals affected by the invalid legislation. *Id.* at 40-41, 68 O.O.2d at 23-24, 313 N.E.2d at 822-823.

■ When a municipality enacts an ordinance such as zoning, it is engaged in the exercise of its police powers, the most elemental of its governmental functions. *Id.* at 40, 68 O.O.2d at 23-24, 313 N.E.2d at 822-823, citing *Pritz v. Messer* (1925), 112 Ohio St. 628, 149 N.E. 30. Amending a zoning regulation constitutes a legislative act. *Westown Merchants Assoc. v. Dayton* (July 13, 1987), Montgomery App. No. 10319, unreported, 1987 WL 14262.

In the case before us, Fairborn's denial of Singer's proposed amendment to the PUD was an exercise of legislative discretion by Fairborn City Council. Even if it were subsequently determined that Fairborn City Council's denial of the amendment was arbitrary and capricious, Fairborn is immune from a cause of action for money damages. Therefore, because Singer has obtained the only relief available—the rezoning of the property through referendum—his first claim for relief is moot.

■ In his second claim, Singer alleges that the action of Fairborn, the city council and planning board in denying the proposed amendment constitutes a taking of private property for public use without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitu-

tion and Section 19, Article I of the Ohio Constitution. In this claim, Singer is challenging Fairborn's denial of his petition for rezoning rather than the constitutionality of the ordinance itself; therefore, we conclude that the *Greenhills* case is not dispositive of Singer's second claim.

■ Singer contends that the denial of any reasonable use for his property constitutes a taking.

"Laws enacted in the proper exercise of the police power, which are reasonably necessary for the preservation of the public health, safety and morals, even though they result in the impairment of the full use of property by the owner thereof, do not constitute a 'taking of private property' within the meaning of the constitutional requirements as to making compensation for the taking of property for public use and as to the deprivation of property without due process of law." *Pritz v. Messer, supra,* 112 Ohio St. at 628, 149 N.E. at 30, paragraph one of the syllabus.

However, when a landowner is completely restricted in the use of his property for any practical purpose, the zoning goes beyond mere limitation of use and becomes a confiscation. *Negin v. Bd. of Bldg. & Zoning Appeals* (1982), 69 Ohio St.2d 492, 497, 23 O.O.3d 423, 426, 433 N.E.2d 165, 169, citing *State ex rel. Killeen Realty v. E. Cleveland* (1959), 169 Ohio St. 375, 8 O.O.2d 409, 160 N.E.2d 1.

In the instant case, a twenty-acre parcel of land owned by Singer was designated as a planned unit development with a 1.5–acre corner lot designated as green space with Singer's approval. Singer subsequently sold all the land except for the 1.5–acre parcel designated as green space.

■ Singer is alleging that the action of Fairborn in refusing to change the green space designation constituted a confiscation of his property without compensation. Singer is asking us to expand the concept of a "taking." Fairborn's denial of Singer's request to amend a zoning ordinance that Singer himself originally requested and agreed to did not constitute a taking as contended by Singer. Fairborn simply refused to give Singer greater rights in his property than he already had. A city's refusal to enlarge an owner's rights in his property does not qualify as a *taking* of private property without just compensation; a refusal to *give* an owner more than he already has is not a *taking.*

Singer's third claim for relief alleges that Fairborn's requirement of a three-fourths majority of council to overturn a planning board decision is an unconstitutional delegation of legislative authority to an administrative body. Singer asserts that he retains standing to challenge the ordinance because if the ordinance is an unconstitutional delegation of legislative power, then he is

entitled to the amendment of the PUD, since a majority of council voted to overrule the planning board's recommendation to deny the amendment. We conclude that it is not necessary to reach the merits of this claim because (i) the relief sought by Singer has been obtained through referendum, (ii) the basis upon which Singer asserts standing to challenge the ordinance is no longer present, and (iii) money damages are not available to Singer as a remedy because a municipality is immune from liability for money damages for its legislative acts.

■ Singer challenges the constitutionality of the zoning ordinance itself in his fourth claim for relief. Singer asserts that the concept of a planned unit development places undue and unreasonable restrictions on the free use of land and is thereby an unconstitutional deprivation of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

In *Greenhills, supra,* the Ohio Supreme Court held in paragraph one of the syllabus that:

"Whoever (1) insistently encourages, solicits and procures a municipal corporation to adopt a comprehensive zoning ordinance, notwithstanding that that part of the ordinance is objectionable which restricts the use of a portion of the land affected thereby to public park and recreational purposes only, (2) fails to disclose to such municipal corporation that legal counsel has advised that the proposed ordinance with respect to such park and recreational lands is unconstitutional, (3) thereafter purchases substantially all the land affected by the ordinance, and (4) requests and receives from the seller a reduction in the purchase price to the extent that the portion of the land restricted to park and recreational uses is transferred substantially without consideration, is estopped from invoking the judicial power to grant relief from such restrictions of the ordinance on the ground that it constitutes a taking of private property without compensation or due process within the meaning of the federal and state Constitutions."

Singer executed two options for the sale of land contingent upon rezoning the property to a planned commercial development. Through the efforts of the potential buyer acting on Singer's behalf, with at least apparent authority, the property was rezoned as requested. A master development plan and final plat plan were approved by Fairborn. Singer signed the final plat designating a little over two acres for street improvements and a 1.5–acre corner lot as green space. Singer subsequently sold an 18.5–acre parcel to Ramco Realty for development of the Five Points PUD Development. Singer is now claiming that the zoning designation of the PUD is unconstitutional.

The facts in the case before us are similar to the facts in *Greenhills*. Singer, through another party, procured the zoning legislation he is now challenging. He derived a monetary benefit from the zoning change by selling the property to Ramco Realty. Singer cannot now claim that the concept of the PUD is unconstitutional. Therefore, the trial court was correct in finding that Singer is estopped from invoking judicial power to grant relief from the restrictions of the Fairborn ordinance. We conclude that the trial court was correct in granting summary judgment as to Singer's fourth claim for relief, based upon the *Greenhills* case.

Furthermore, even if the trial court had erred in granting summary judgment for Fairborn, Singer's fourth claim is now moot. The act of approving a PUD constitutes legislative action. "[T]he action of the board in approving such a plat is the functional equivalent of traditional legislative zoning, even though the entire PUD area is covered by the same 'nominal' zoning classification both before and after approval of the plat." *Gray v. Trustees of Monclova Twp.* (1974), 38 Ohio St.2d 310, 314, 67 O.O.2d 365, 367, 313 N.E.2d 366, 369. The implementation of a PUD, as well as its creation, is a legislative act, which is subject to referendum. *Peachtree Dev. Co. v. Paul* (1981), 67 Ohio St.2d 345, 351, 21 O.O.3d 217, 220–221, 423 N.E.2d 1087, 1092. As previously discussed, a cause of action for money damages will not lie against a municipality for losses sustained as a result of the adoption of a zoning ordinance that is subsequently declared invalid. *Superior Uptown v. Cleveland, supra.*

Singer has obtained the requested zoning denied by Fairborn through referendum. Because Fairborn is immune from a cause of action for money damages, Singer's fourth claim for relief is moot.

We conclude that any error committed by the trial court in connection with Singer's second, third, and fifth assignments of error has become moot in view of the subsequent rezoning of his property.

Singer's second, third, and fifth assignments of error are overruled.

## IV

Singer's fourth assignment of error is as follows:

"The trial court erred in entering judgment in favor of defendants Kuchenbecker and Kotecha as reasonable minds could come to more than one conclusion regarding the actions of those defendants."

Singer asserts that Kuchenbecker and Kotecha, planning board members, maliciously and/or recklessly made fraudulent representations and omissions with the intent to cause the planning board and city council to rely upon such

representations and to deny Singer's proposed amendment to rezone the PUD. As a result, Singer alleges that he suffered serious financial damage.

### A

The trial court found Kuchenbecker and Kotecha immune from liability, pursuant to R.C. 2744.03(A)(6)(b), and granted summary judgment in favor of Kuchenbecker and Kotecha.

Singer asserts that Kuchenbecker and Kotecha recklessly and maliciously misrepresented to the Fairborn City Council and Planning Board that Singer had promised that the corner lot would remain green space forever when the original PUD zoning was obtained in 1974. As a result of this deliberate misrepresentation, and the omission of certain facts to the contrary, Singer contends that the proposed amendment to the corner lot was denied, thereby causing him financial loss.

The trial court found that it appeared from the record and evidence that "Kuchenbecker & Kotecha's representation that the plaintiffs promised and agreed to leave the corner lot landscaped and undeveloped was a fair representation." As a result, the trial court determined that they did not act maliciously, wantonly, recklessly, or in bad faith so as to strip themselves of the immunity provided under R.C. 2744.03(A)(6)(b).

 Evidence presented by Fairborn shows that Singer did agree to the 1.5–acre of green space in the PUD. The dispute revolved around whether or not the understanding was that the lot would remain green forever or only until it was needed for further development. The evidence shows that Kotecha represented to the planning board and city council that a promise to keep the lot green forever was made by Singer's representative and that Kuchenbecker omitted certain documents that would have tended to negate that representation. The evidence presented by Fairborn, as moving party, however, does not establish that such a promise was indeed made by Singer's representative. Furthermore, the documents filed by Fairborn in conjunction with its motion for summary judgment are not proper documents for consideration in deciding a motion for summary judgment. Civ.R. 56(C) provides in pertinent part:

" * * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. * * * "

Fairborn attached copies of the minutes of various Fairborn Planning Board meetings as exhibits to its motion to dismiss. Affidavits were not filed with the minutes. Therefore, the documents filed by Fairborn with its motion should not have been considered in rendering summary judgment in favor of Fairborn.

However, even if the documents were properly before the trial court, Fairborn has failed to prove that reasonable minds can come to only one conclusion, that being adverse to Singer. Fairborn has failed to satisfy the burden of showing that no genuine issue of material fact is present in this case. Whether or not Kuchenbecker and Kotecha maliciously, recklessly or fraudulently misrepresented and omitted facts to the public agencies is a factual question to be determined by a trier of fact.

### B

The next issue to consider, however, is whether Fairborn is entitled to judgment as a matter of law because Singer's complaint fails to state a cause of action against Kuchenbecker and Kotecha.

The elements for a cause of action in fraud are as follows:

"(a) a representation or, where there is a duty to disclose, concealment of a fact,

"(b) which is material to the transaction at hand,

"(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,

"(d) with the intent of misleading another into relying upon it,

"(e) justifiable reliance upon the representation or concealment, and

"(f) a resulting injury proximately caused by the reliance." *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus, citing *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 10 OBR 500, 462 N.E.2d 407. In order for a cause of action in fraud to lie, the plaintiff must have suffered actual damages as a result of an act intentionally committed by the defendant with the purpose of injuring him.

In the case before us, Singer asserts that he suffered financial damage due to Kuchenbecker and Kotecha's misrepresentations to the city council and planning board. Singer does not allege that the individuals maliciously misrepresented facts with the intent to cause him personally to rely upon such misrepresentations to his detriment. Therefore, we conclude that Singer does not raise a cause of action for fraud in his amended complaint.

Nor does Singer assert a cause of action for tortious business interference. "The basic principle of such an action is that one who, without a privilege to do so, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship with another, or perform a contract with another is liable to the other for the harm caused thereby." *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App.2d 51, 57, 9 O.O.3d 216, 219, 379 N.E.2d 235, 238, citing *Reichman v. Drake* (1951), 89 Ohio App. 222, 45 O.O. 444, 100 N.E.2d 533; *Pearse v. McDonald's* (1975), 47 Ohio App.2d 20, 22–23, 1 O.O.3d 164, 165, 351 N.E.2d 788, 790.

In the instant case, Kuchenbecker and Kotecha did not induce or cause a third party to fail to perform a contract with Singer or to not enter into, or continue, a business relationship with Singer. Therefore, we conclude that Singer does not have a cause of action for tortious business interference against Kuchenbecker and Kotecha.

Kuchenbecker and Kotecha's misrepresentations and omissions allegedly induced the Fairborn City Council to deny Singer's proposed amendment for his corner lot. As a result of the alleged conduct, Singer's proposed amendment was denied, thereby causing Singer serious financial harm.

██ An action at law should be available to redress the wrong caused to an injured party as a result of such alleged conduct. We hold that the tort of malicious interference with the constitutional right to petition the government for redress of grievances (protected by Section 3, Article I of the Ohio Constitution, and by the First Amendment to the United States Constitution) occurs when a third party, without a privilege to do so, knowingly and maliciously makes a false statement for the purpose of inducing a public body to act or to fail to act, when the act, or failure to act, adversely affects the injured party. We do not go so far as to hold, however, that a mere omission may give rise to liability, since that would have an unduly chilling effect upon the speaker's exercise of his rights of free speech. To speak at all would give rise to a substantial risk that, in the heat of the moment, and perhaps, also, in the give and take of debate, some material fact would be omitted. If that, alone, could give rise to an inference of malice and the liability resulting therefrom, there would be too strong a disincentive to speak out at all concerning any controversial subject.

We conclude that Singer's complaint states a cause of action against Kuchenbecker and Kotecha for the malicious interference with Singer's right to petition his government for redress. Therefore, Kuchenbecker and Kotecha are not entitled to judgment as a matter of law.

## C

The final issue presented is whether individual members of the planning board are immune from tort liability for allegedly interfering with Singer's attempt to amend the zoning designation of his property. R.C. 2744.03(A)(7) allows for a qualified immunity to certain employees of a political subdivision. Neither party disputes the applicability of R.C. 2744.03 to this case. R.C. 2744.03(A) provides, in pertinent part:

"(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

" * * *

"(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division, the employee is immune from liability unless one of the following applies:

"(a) His acts or omissions were manifestly outside the scope of his employment or official responsibilities;

"(b) His acts or omission were with malicious purpose, in bad faith, or in a wanton or reckless manner;

"(c) Liability is expressly imposed upon the employee by a section of the Revised Code.

"(7) The political subdivision, and an employee who is a county prosecuting attorney, city director of law, village solicitor, * * * an assistant of any such person, or a judge of a court of this state, is entitled to any defense or immunity available at common law or established by the Revised Code."

The immunity granted by R.C. 2744.03 is not absolute. The intent of the statute is to provide certain named officers, but not officers in the positions of Kuchenbecker and Kotecha, with an absolute immunity if absolute immunity was provided for under Ohio common law. The immunity granted by R.C. 2744.03(A)(6)(b) is *qualified;* there is no immunity if the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner. The underlying rationale of qualified immunity is based upon a concern for the efficient operation of government. *Catalina v. Crawford* (1984), 19 Ohio App.3d 150, 152, 19 OBR 240, 241–242, 483 N.E.2d 486, 488.

The Ohio Supreme Court has held that members of a municipal council are provided with a qualified immunity for the exercise of their legislative discretion in voting. The council members are exempt from individual liability

only when acting in good faith. *Hicksville v. Blakeslee* (1921), 103 Ohio St. 508, 134 N.E. 445, paragraph two of syllabus; see *C & D Partnership v. Gahanna* (1984), 15 Ohio St.3d 359, 15 OBR 480, 474 N.E.2d 303. An absolute privilege relative to slanderous publication was extended to utterances made during the course of official proceedings by members of local governing bodies if the statements are relative to a matter under consideration, discussion or debate. *Costanzo v. Gaul* (1980), 62 Ohio St.2d 106, 16 O.O.3d 134, 403 N.E.2d 979. In *Costanzo*, the Ohio Supreme Court held that:

"[A]n utterance or publication of a defamatory statement made by a member of a legislative body of a local governmental entity, which utterance is made other than in a legislative session or related meeting, should be afforded a qualified rather than an absolute privilege." *Id.* at 110–111, 403 N.E.2d at 982.

The scope of an absolute privilege is applicable in limited areas of activity. *Id.* at 109, 403 N.E.2d at 982.

 The effect of R.C. 2744.03, with the exception of the common-law immunity preserved by R.C. 2744.03(A)(7), is to abrogate all other immunity provided under common law. The statute does not extend an absolute privilege to an administrative body whose functions are primarily administrative in nature. In such instance, a qualified privilege is sufficient to protect a public servant, as opposed to providing protection to a member of a local governing body. We conclude that members of the planning board are provided with qualified immunity pursuant to R.C. 2744.03.

The elements of Ohio's good faith immunity defense include:

1. The official's action must have been taken within the scope of his authority;

2. The actions must have consisted of duties involving the exercise of discretion and judgment; and

3. The individual actions must have been taken in good faith and without malice or corrupt motive. *C & D Partnership v. Gahanna, supra,* 15 Ohio St.3d at 364, 15 OBR at 484, 474 N.E.2d at 307, citing *Scot Lad Foods v. Secy. of State* (1981), 66 Ohio St.2d 1, 20 O.O.3d 1, 418 N.E.2d 1368. The issue of whether or not Kuchenbecker and Kotecha are subject to liability depends upon whether or not they acted with malicious purpose, in bad faith, or in a wanton and reckless manner. Because a genuine issue as to a material fact exists and reasonable minds can come to more than one conclusion when reviewing the evidence most strongly in Singer's favor, we conclude that the trial court erred in finding Kuchenbecker and Kotecha immune from liability

and in granting summary judgment as to the claims alleged against Kuchenbecker and Kotecha.

Singer's fourth assignment of error is sustained.

V

Singer's fourth assignment of error having been sustained, and all of his other assignments of error having been overruled, the judgment of the trial court in favor of the city of Fairborn is affirmed; the judgment in favor of Kuchenbecker and Kotecha is reversed; and this cause is remanded for further proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

WILSON and WOLFF, JJ., concur.